### HODGE'S HEIRS vs. DURNFORD.

An attorney, in fact, appointed to receive an instrument of mortgage, is not responsible for not giving notice of it, unless, he was specially directed so to do.

APPEAL from the court of the first district.

*Livingston*, for the plaintiffs. The points on which the plaintiffs rely, and the proofs and authorities by which they are supported, are the following :

East'n District.
*March*, 1823.

HODGE'S
HEIRS
*vs.*
DURNFORD.

The heirs cannot sue the executor for a single act of his administration ; the action must be, to compel him to accouut.

1. Durnford acted either as the mandatory or the *quasi negtiorum gestor* of the deceased in his life time, in securing the debt due from St. Maxent. They rely for proof of this upon his signing the act; supported by the circumstancial evidence of Dr. Dow—that Hodge, for some time before his death, could not attend to business.

The defendant insists on the presumption that Hodge was personally present, and that Durnford only signed for him, and that his commission ended with this act. But we rebut this, by the law and practice, which is without exception, that when the party is present but cannot sign, either through ignorance, or other inability, the notary must certify the fact and the cause, 3, *Feb. lib. de Es..p.* 442, *old ed. c.* 26, § 1, *no.* 2. " *Los quales ( los otorgantes ) sabiendo y pudiendo firmar las firmaran, y si no, un testigo instrumentel a su ruego, haciendo mencion en la escritura que este firmara por el ortogante.* " Here we see that when one, only signs for another without intending to do more, that then the notary must put it in the writing stating that one of the witnesses will sign, *firmara,* for him, *same book p.* 422,*c.* 16, § 1, *no.* 3. " *La quarta, que lo firma los ortorgantes*"

East'n District.
*March*, 1823.

HODGE'S
HEIRS
*vs.*
DURNFORD.

(as in the above authority) but adds "*y expressando el motivo de su impossibilidad.*"

The expression in the act that "Hodge being present accepted," &c. is no proof of his being personally there, but coupled with the signature of Durnford "For David Hodge," shews that all that was meant, was, that Hodge was present by his agent Dunford, it is to be remarked too, that the act of accepting was not an onerous one, and that being purely for the benefit of the obligee any one might accept for him. This distinction may be gathered from the latter part of the authority last quoted, where it is said that the notary must certify that he knows the obligor, but as to the obligee it is not necessary because he undertakes no duty.

2. That Durnford having undertaken to receive the security and began to act, was obliged to do every thing necessary to give it effect, and that whether he acted as mandatory or *quasi neg. gestor*, his duties and obligations were the same ; for this we rely on the following authorities, *Civ. Code, Quasi Contract. ib, mandat. Pothier treatise of mandate, no.* 38, 46, 47. *ib. Quasi Neg. Gestor, no.* 201, 203, 208. *The whole of these treatises passim.*

East'n District.
*March,* 1823.

HODGE'S
HEIRS
*vs.*
DURNFORD.

3. The doctrine of the liability of a mandatory, is said to be shaken by the decision of *Breedlove* & *Bradford* vs. *Turner.* It is sufficient to answer that, that case was decided on a totally different point. But attorneys at law are not mandatories, they are special officers; and as far as their duty lies in the exercise of judgment, they are only bound to exercise it according to the best they have. The law of mandatories is clear and as precise as any title in the law; he is bound *pro levissima culpa,* which also includes, negligence, and want of skill. This doctrine applies particularly to the *quasi neg. gestor,* who, by intermeddling to my prejudice has, perhaps, prevented my employing some one who understood it better, or would do it with more care.

The neglect here was gross—apparent to every body that notice must be given, to prevent the payment to the original creditor.

Durnford knew that it was necessary. In the year 1810, he brought a suit against Seghers—*Record, no.* 2801, in evidence in this case.

The suit is brought on the same transfer, which is the foundation of this suit; and in the petition, Durnford alledges, that the de-

East'n District.
*March*, 1823.

HODGE'S
HEIRS
*vs.*
DURNFORD.

fendant, Seghers, had notice of the transfer when it was made, by which he became liable, 19th January, 1811. Segers answers by a general denial, 8th June, 1814. The case was brought to trial, and judgment given in favour of the defendant. This suit, contradicts, by his own acts, three of his grounds of defence.

1st. That he did know, that notice was necessary.

2d. That Seghers would not have been liable, if the notice had been given.

3d. That no action lay against Seghers, on the assignment.

By another record, in evidence also, in this case, no. 2571, (no. 47 in this court,) the *syndics of St. Maxent* against *Seghers*, it appears, that as late as 1797, six years after the transfer, Seghers still owed a balance of $30,000 and upwards, to St. Maxent; so that, if at any time within six or seven years, Durnford had done that which he did in 1810, commenced a suit against Seghers, or given him notice of the transfer, the debt would have been sesured. In that suit, a balance of 200 dollars was recovered. But, by the suit, No. 617, also in evidence, $7000 was directed to be

East'n District.
*March*, 1323.

HODGE'S
HEIRS
*vs.*
DURNFORD.

credited to Segur,* by the syndics of St. Maxent, for money paid, under the Spanish government, and not included in the former amount; so that Segur's estate has overpaid more than 4000 dollars.

The insolvency of St. Maxent's estate, appears by the several suits brought by his syndics, above referred to; and also, by the suit brought by the syndics, under the Spanish government, against Segur, to liquidate the account. By which it appears also, that the first payment of Segur's mortgage to St. Maxent, was not paid, until more than a year after the death of Hodge—that upwards of $40,000 were paid by him, between that time and the year 1797, when there was $30,000 reported due.

In the year 1796, Durnford brought a suit against the widow St. Maxent, to which his syndics became party; this record is submitted to the court.

Fol. 1. They will find the note given to the merchants in Jamaica, endorsed by them; so that if this note is the foundation of the debt, it is *prima facie* the proprietors.

Fol. 4. Durnford alledges, that the debt is due to Hodges' estate.

---

* In the preceding pages, this name was erroneously printed *Seghers.*

East'n District.
*March*, 1823.

Hodge's
HEIRS
*vs.*
Durnford.

Fol. 12. Letter to Hodge from St. Maxent, apologizing, for not paying the debt from Jamaica.

Fol. 16. Answer of Mde. St. Maxent, acknowledging the debt.

Fol. 18. Syndic of the creditors comes in and says, he has nothing to oppose to the demand of Durnford.

Fol. 19. Decree, directing that Durnford's debt be admitted, and paid, according to its proper rank.

From this record, as well as from the *mortuary* proceedings, it appears, that Durnford was not only an executor, but that, immediately after the death of Hodge, he was, at the request of the other executors, appointed to finish all the business of the estate, alone. *Vide fol.* 8 & 9.

From all these facts and authorities, the plaintiffs think it most evidently appears, that the debt in question, was well secured by the assignment of Segur's mortgage; and that it has been lost, by neglect in giving notice—Whose neglect was this?

Durnford's: if he was the mandatory, or the *quasi neg. gestor*, before the death of Hodge.

Durnford's: if he was *not* the mandatory, or

East'n District.
*March*, 1823.

HODGE'S
HEIRS
*vs.*
DURNFORD.

the *quasi neg. gestor*; because, it was his duty, immediately after the death of Hodge, to sue for, or at least, to give notice.

It is evident that, if any step had been taken within four years, the debt would have been secured.

The estate cannot suffer by such gross neglect.

By the will in the mortuary proceedings, the plaintiffs are instituted heirs. The proof of their identity is annexed to this, and to the papers in another suit, also in evidence; and indeed, was not contested.

It has been suggested to me by the defendant's counsel, that he will adduce an argument from the decree, in favour of Durnford, allowing the debt against the insolvent estate of St. Maxent, to show that, from that circumstance it should be presumed, that the debt is secured.

To this I answer, first, that no such presumption ought to arise, from a decree for the payment of a simple contract debt against an insolvent estate, to be paid in its proper rank; for this debt, though a mortgage debt against Segur, gave no lien on the estate of St. Maxent.

Second, that if it had been secured in 1796, against St. Maxent's estate, Durnford would not have sued Segur for it, in 1810.

Third, that the presumption is, that a debt, carrying no privilege against an insolvent estate, is at least, so strong, as to throw the burthen of proof on the party, who is interested in showing its solvency.

Fourth, that in this case, it was particulary the duty of Durnford, who had the whole management of the estate, and alone knew, or ought to know, whether the debt was secured.

Fifth, I answer, that if any dividend can be obtained from the estate of St. Maxent, he will be subrogated to our rights, after making the payment, but that

Sixth, from the lapse of time, near 30 years, that the estate has been in the hands of the syndics, they must, long ago, have settled the same, and filed their tableau of distribution.

The argument may be resumed shortly, thus :—

Either Durnford has received this money, or he has not. If he has received it, he cannot legally object to paying us, unless the

estate is indebted to him, which he has neither
alledged nor proved.

If he has not received it, it has been abundantly shown, that it is owing to gross neglect, either as agent or executor, and it matters little to us in what capacity.

As heirs, we are entitled to the whole estate, and of course, to any and every particular part; and the executor surely cannot object to delivering or paying any particular sum, by showing that there are other parts of the estate which he has not accounted for. We are, therefore, entitled to a decree for the amount of this debt, without waiting for the settlement of the estate, which he may retard for years, as he has already done.

All this is intended, merely as an application of the argument to the facts, and a statement of these, with a reference to the different records : for the application of the law to the case, the plaintiffs refer to the arguments on the hearing.

*Hennen*, for the defendant. The plaintiffs and appellants are not entitled to recover against the defendant for the following reasons:

1st. There is no proof that the defendant ever signed the notarial act which is consi-

East'n District. dered as the foundation of this suit : he is not
March, 1823.

HODGE'S
HEIRS
vs.
DURNFORD.

stated to be a party to it in any part of the
body thereof; or to have contracted in any
way therein. Notarial acts are proof only
against the parties thereto. 11 *Martin*, 634,
*Pothier, on Oblig. n.* 700, 704. And then only
as to the contents thereof—3 *Febrero Adiciona-
do*, 400, *n.* 2.

2d. The notarial act (if signed by the de-
fendant) was the contract and agreement of
D. Hodge, who the notary declares was pre-
sent at the passing thereof. "*Estando presente a
su ortogamiento D. Hodge, dixo, la acceptaba a su
favor.*" Hodge was a merchant of eminence
and well known in the province of Louisiana,
though at the time of passing the act, in-
capacitated from attending to business from
a stroke of the palsy; and most probably
incapable of writing his name. The de-
fendant being his clerk at the time, signed
his name for Hodge, " *Thos. Durnford para
D. Hodge.*" This is the only way, in which
it is possible to reconcile the act and the
signature to it. For the notary assures us
that D. Hodge was present, agreeing and
consenting to the contents of the instrument:
and even that he signed it. " *Asi lo ortorgaron*

*y firmaron.*" The words of the act are clear,
plain and explicit; free from ambiguity; pre-
senting a natural meaning; therefore no in-
terpretation should be admitted to change
them in any way, (*see* 8 *Martin*, 1, *Waters* vs.
*Bachus.*)    It is inadmissible to say, with the
counsel of the plaintiffs, that Thos. Durnford
the agent of D. Hodge, and acting for him, was
meant by the notary; when he said that D.
Hodge was present, agreeing, accepting,
signing.    For such construction is forced and
contrary to the natural meaning of the words.

Is is admitted that when one of the parties
to an act cannot sign, it should be men-
tioned in the body of the act.    But the omi-
sion of the notary to fulfil this form does not
authorise the conclusion that such party was
not present, but was represented by an agent;
for in that case, the act should have mentioned
that it was the agent or attorney in fact who
contracted.

The defendant, it may be fairly concluded,
was called upon by his employer Hodge, to
sign the act for him as evidence of his ac-
ceptance thereof; (which might have been
done by any one:) and *with his signature his
commission and authority ended.*

East'n District.
*March*, 1823.

HODGE'S
HEIRS
*vs.*
DURNFORD.

3d. Had it been the duty of the defendant to do more than sign his name for his employer Hodge; had even the defendant undertaken to perform every thing which it was requisite for Hodge himself (who made the contract) to do: yet it would have been unavailing. Therefore, no action could be maintained against him for the omission of an useless act.

The instrument is in form, a mortgage of a debt: clumsily and carelessly drawn up: a *non descript ;* such as we find no where in Spanish books of forms. But admitting that it is an *assignment*, as the petition of the plaintiffs terms it ; still the act is totally void and inoperative, since it gives no power to sue Segur the debtor of St. Maxent. A clause to that effect was absolutely necessary to entitle Hodge to demand the debt from Segur. " *Advertiendo que si carece de este requisito la cesion, y el deudor se resiste a su paga, quedara frustrada, y sera inefecaz la cesion, por defecto de potestad, para apremiarle judicialmente a su solucion,*" 3 *Febrero Adicionado*, 237, *n.* 40, *part.* 1, *cap.* 14, *sec.* 2, *n.* 40.

We may fairly infer that this was one of the reasons of the judgment in favor of Segur when the defendant sued on this *strange in-*

*strument.* No reasons or motives were given for the judgment ; nor any law cited. But if the above authority was shown to the court, it must have been conclusive. See a regular and legal instrument of assignment. 3 *Febrero, Ad.* 255, 6.

East'n District.
*March,* 1823.

HODGE'S
HEIRS
*vs.*
DURNFORD.

4th. Conceding to the counsel of the plaintiffs, that the defendant, and not his employer Hodge, made the contract with St. Maxent, and that no notice was given to Segur, by which omission the mortgage availed nothing ; yet it was but an error in judgment on the part of the defendant, for which he cannot be liable.

On reading the contract passed before the notary, there was nothing which could indicate to him a necessity of notifying Segur. As it was a mortgage by public act, it was natural for him to conclude that all that was requisite was done. In reading the seven volumes of the *Library of Notaries, by Febrero*, I have not been able to find the doctrine of notice mentioned ; much less to find that without a notification the assignment or mortgage may be defeated. The defendant not being conversant, (from his employment as a clerk to a merchant,) in the niceties of the Spanish

HODGE'S
HEIRS
*vs.*
DURNFORD.

law, might well suppose this formality unnecessary, and unavailing. As in truth it would have been, as I have shown, from 3 *Febrero*, *Ad.* 237, *art.* 40, above cited.

This court in the case of an attorney, now appointed to one of the highest judicial offices of the State, F. L. Turner, has adjudged that for an error in judgment on a point of law, a man bred to the profession is not responsible in damages. 9 *Martin*, 353, *Breedlove* vs. *Turner*. Our statute and the *Partidas* consider attornies as mandatories, and make their responsibility the same. More, assuredly, cannot be required of a man unversed in the profession, than from an able counsellor.

An argument against the defendant is attempted to be drawn from the record of the suit instituted in 1810, by him against Segur on this mortgage; because the counsel, who drew up the petition, has alledged that Segur had notice of it. Supposing this proved, that the defendant knew at that time, that such notice was requisite; it by no means follows that he was equally conversant, with the law eighteen years before.

The judgment in that suit proves only that Segur was not liable on the instrument : and

nothing more : which was evidently correct.

East'n District.
*March,* 1823.

HODGE'S
HEIRS
*vs.*
DURNFORD.

First. Because the testamentary executor had no right to institute the suit ; more than one year having elapsed since his appointment. 4 *Martin,* 338, *Lamothe's executor* vs. *Dufour.*

Second. Because the instrument gave no power from St. Maxent to Hodge, to demand the debt. 3 *Febrero, Ad.* 237, *n.* 40.

The record of the suit, instituted by the defendant in 1795, against the widow of St. Maxent, for the recovery of this debt, shows that, at that time, he was under the impression that nothing could be done against Segur. This procedure, certainly does not countenance the idea, that the defendant was negligent about the debt; but rather, that he was well assured, that he could have no legal demand against Segur, who was still owing a large sum to St. Maxent.

But it is said, that the defendant, as testamentary executor of D. Hodge, was bound to give notice to Segur, of the assignment; and therefore, for that neglect, he should be liable. Most of the arguments already used, may be again invoked, in reply to this new effort of the of counsel of the plaintiffs. But further, this is an after thought which he

East'n District.
*March*, 1823.

HODGE'S
HEIRS
*vs.*
DURNFORD.

knew nothing of, when he instituted this action. No allegation like it, is made in the petition; and under a reserve of all legal objections and exceptions to the testimony offered, (which was made in the court below,) none of it can be made to apply, but such as is conformable to the allegations made in the petition.—11 *Martin*, 547, *Flogny* vs. *Adams*.

No argument against the defendant, therefore, in his capacity of testamentary executor of D. Hodge, can be urged now; on a future action against him, the plaintiffs will have the full benefit arising from it, if they should think it worth pursuing.

5th. The plaintiffs have no interest in this debt; it belongs to merchants in Jamaica; This appears, from the mortuary proceedings and inventory of D. Hodge; and the suit of the *Executor* vs. *St. Maxent's widow*, and therefore cannot maintain this action.

6th. The defendant appears to have acted throughout, with a good faith, and with all the diligence and knowledge he possessed; and therefore, cannot be liable in this action for damages; even admitting, the undertaking to be such as the counsel of the plaintiffs has stated it.

East'n District.
*March*, 1823.

HODGE'S
HEIRS
*vs.*
DURNFORD.

" *Nihil enim ampliùs quàm bonam fidem praestare eum oportet, qui procurat.*" *Dig.* 17, 1, 10; 2 *Dict. du Digeste,* 8, *no.* 38; 7 *Part.* 33, 11; 1 *Henry Blackstone,* 158 ; 9 *Martin,* 353.

7th. This action is prematurely brought; the defendant, in his capacity of testamentary executor of D. Hodge, has obtained judgment against St. Maxent's estate, for this debt. Until his accounts, as testamentary executor, has been exhibited, and until it is known what he has received on that judgment, the amount of the loss cannot be ascertained; and supposing him liable to the action, it can be only for the difference between the debt and the amount of the dividend against St. Maxent's estate. The estate of Hodge may prove insolvent, too, as the defendant pleads it actually is: the plaintiffs, then, who now claim as " *beneficiary,*" heirs, may be entitled to nothing. For, until all the debts of Hodge have been shown to be paid, they cannot claim any part of this estate.—*Civil Code,* 164–170.

8th. The action is lost by prescription.

First, of one year. *Part.* 7, 9, 22 ; *Institutes of Justinian, lib.* 4, *tit.* 4, *with the gloss.*

Second, by that of ten years. *Nov. Recop.*

East'n District.
March, 1823.

HODGE'S
HEIRS
vs.
DURNFORD.

*lib.* 11, *t.* 8 *l.* 5 ; 7 *Ferrari's Bibliotheca*, 295, *no.* 30 ; *Dunod*, 65.

Third, by that of thirty years. 3 *Part.* 29, 22 ; *Civil Code*, 487, *art.* 272.

Therefore, it is believed, most confidently, that this court, will affirm the judgment rendered in favour of the defendant.

PORTER, J. delivered the opinion of the court. The petitioners state, that they are the beneficiary heirs of the late David Hodge.

That, on the 12th August, 1789, Laurent Segur, of the city of New-Orleans, mortgaged to Gilbert St. Maxent, property adjoining said city, for the sum of $72,000.

That, on the 26th February, 1791, Gilbert St. Maxent, being indebted to David Hodge in the sum of $4075, 50, mortgaged to him the first payment of the debt due by Segur.

That Thomas Durnford, as agent of Hodge, accepted the said mortgage from Maxent, and by thus undertaking to act for the mortgagee, engaged to do every thing that would render the contract operative and valid; and particularly, to give notice of it to Segur.

That the heirs of Segur have sold a part of the mortgaged property to Gallien Preval.

That the said heirs refuse payment of the

East'n District.
*March*, 1823.

HODGE'S
HEIRS
*vs.*
DURNFORD.

portion hypothecated to Hodge, in the mortgage given by their ancestor to St. Maxent, on the ground of want of notice that any part of the debt was mortgaged or assigned; in consequence of which, the whole amount was paid to St. Maxent, the original mortgagee.

And that David Hodge, departed this life, on the 2d August, 1791, leaving Thomas Durnford his executor; who, soon after, commenced an action against the estate of the said G. St. Maxent, on the said mortgage or assignment.

By reason of which premises, the petitioners pray, that the heirs of Segur may be condemed to pay the said sum of $4075— that Durnford be also called to answer the petition; and if it shall appear, that the estate is exonerated, by reason of any default in giving notice, that he be decreed to pay the same with interest; and lastly, that Gallien Preval may be made a party, and that he have notice of the claim now set up.

To this petition, the heirs of Segur pleaded that the act of transfer or assignment, was never notified to their ancestor, and that he paid in his life time, the whole amount of the mortgage debt, to St. Maxent.

Durnford set up the following grounds of defence.

East'n District.
*March*, 1823.

HODGE'S
HEIRS
*vs.*
DURNFORD.

1st. A general denial.

2d. That the defendants were not heirs of Hodge.

3d. That the mortgage was not taken for any debt due, or demand of Hodge, but for the benefit of sundry persons, mentioned in an annexed account.

And fourth, that the defendant was appointed executor, with Robert Dow and others—that no final settlement of the said estate has yet been made, and that it is supposed to be insolvent.

With leave of the court, the defendant afterwards pleaded the prescription of one, two, three, four, five, ten, twenty, and thirty years.

Preval, the purchaser of the mortgaged property, answered and averred, that the matters and things now in dispute, had already been decided in the case of *Thomas Durnford* vs. *Laurent Segur*, where judgment was given for the defendant.

It seems to have been conceded, in the argument, that the defence, set up by the heirs of Segur, has been fully sustained by the proof. The objection, that the persons named in the petition, are not heirs of Hodge, was also abandoned. We have, therefore, only to

East'n District.
*March*, 1323.

HODGE'S
HEIRS
*vs.*
DURNFORD.

inquire, whether a good cause of action has been established against the defendant Durnford.

The plaintiffs insist, they have a right to maintain their action against him, because, he acted as agent of Hodge, in accepting a mortgage or transfer of a claim on Segur. That by thus undertaking to act for another, he engaged to do every thing to render the agreement, entered into by him, valid and operative; and that notice to the person, whose debt was assigned, was necessary, in order that the transfer should have that effect.

The instrument of writing, by which this agency is said to be evidenced, was passed on the 26th February, 1791; and it is therein stated, that Maxent, being indebted to Hodge in the sum of $4075, for which he holds obligations, due at several times—the former declares, that he mortgages to the latter, an equal quantity upon the $72,000 that Segur owes him, to be taken out of the first instalment of that debt.

Then follows the clause, which is the most material in this case.

" *Y estando presente à su otorgamiento Don David Hodge, digo la acceptaba à su favor para*

East'n District.
*March*, 1823.

HODGE'S
HEIRS
*vs.*
DURNFORD.

*usar de ella siempre y quando le convenga, y así lo otargaron y firmaron siendo testigos Don M. Gomez, Don Celestin Lauvergne, y Santiago LeMaire, vecinos y presentes.——Thomas Durnford para David Hodge, Gilbert Antonio St. Maxent."*——And being present at the making of this act, Mr. David Hodge says, he accepts it in his favour, for to use it, when and where it may be necessary, and thus he approves it, and signs it. The witnesses being Miguel Gomez, Celestin Lauvergne and Santiago Le Maire.—Thomas Durnford, for David Hodge, &c.

The expressions just quoted, connected with the testimony taken in the cause, that Hodge was affected with the palsy, some months previous to his death, has given rise to much discussion, between the counsel who have argued this cause. It is insisted on the one side, that it is evident, from the statement of the notary, announcing the presence of Hodge at the making of the instrument, that he was in fact there, and that Durnford signed for him, not as agent in the transaction, but merely to supply a defect, created by his infirmity. While on the other, it is urged, that the signature of the defendant announces the quality under which he acted—that the de-

East'n District.
March, 1823.

Hodge's
HEIRS
vs.
Durnford.

claration of the notary, that Hodge was present, is not inconsistent with a constructive presence through his agent, *qui facit per alium fecit per se*:—that if Hodge had been there and disabled by bodily weakness from affixing his name to the act, the conclusion of it would have been different, as the law makes it the special duty, in such cases, of the notary to state the causes which prevented the party from signing. *Febrero addic. part.* 1, *cap.* 19, § *final.*

We agree with the plaintiff in his construction, and shall, therefore, proceed to examine the main question in the cause, whether it was the duty of Durnford to give notice of the assignment.

The petition in this case, charging in express terms, that Durnford was attorney in fact of Hodge, and there being nothing in the evidence which contradicts this allegation, we dismiss all consideration concerning his duties as *negotiorum gestor*, and his responsibility as such.

Viewing him in the light of an attorney in fact, there has been no proof given, that the power extended any further than to execute the instrument on which his name appears.

East'n District.
*March,* 1823.

HODGE'S
HEIRS
*vs.*
DURNFORD.

It would be presuming strongly, indeed, to conclude, that because a man acted as empowered agent in a particular transaction, that he therefore undertook to go on and do all other things connnected with, or arising out of it. In the case of the *negotiorum gestor*, who interferes where the interest of the principal does not positively require it, there is a good reason for requiring him to do every thing which is a dependence of the affair he commences. It is of the very essence of such contract, that there should be something done for another, without the order or knowledge of the person for whom it is transacted; consequently, the person interested, has not the means of taking those steps, or making those arrangements, which may be rendered necessary, by the change made in his affairs. Under such circumstances, it is a wise provision of the law which compels the *negotiorum gestor*, to do every thing which is necessarily dependant of the business he commences: to finish what he has begun. Without such an obligation, every man in the community would be at the mercy of ignorant, and officious friends. But this reason has not any application to the attorney in fact, who

acts under the order of the principal; the lat-
ter knows, what he has directed his agent to
do; his attention is awake to demand an ac-
count of what has been done; and he has
the means of taking, himself, all measures
consequent on the change produced in his
affairs, by the conduct of the person who acts
for him.

We see, therefore, no ground whatever, for
holding, that Durnford was obliged to give
notice of this mortgage. There is no evi-
dence before us, that he was the general
agent of Hodge—or that, in the present in-
stance, his mandate extended any further than
accepting the mortgage from St. Maxent.

This view of the case, renders it unneces-
sary to decide, what degree of care is required
of the attorney in fact. The counsel has re-
ferred us to *Pothier*, on the contract of man-
date, where it is stated, that he who accepts,
gratuitously, an office of friendship for ano-
ther, is obliged to bring to the discharge of
it all the care, and all the skill, which the per-
formance of the duty he has asumed requires;
and that he is responsible for the slightest
fault—*Pothier, traité du contrat de mandat, n.* 46,
47, 48. When the case does occur, it will be,

East'n District. *March*, 1823.

HODGE'S
HEIRS
*vs.*
DURNFORD.

perhaps, seen that these principles of the Roman law from which *Pothier* draws his doctrine, have not been adopted to their full extent in Spain, *see p.* 5, *tit.* 12, *l.* 20, 21 ; *ib.* 7, 32, 2. 12 *Martin*, 84.

And we are to be understood not to express any opinion on the question raised in argument, whether the defendant is not liable, by reason of not having collected the money, in his capacity of executor. The petition does not allege responsibility in that character, and the evidence has been taken under an exception. Besides, we are of opinion that if the defendant's conduct, as executor, is to be made the ground of recovery, that a single act of his administration cannot be selected as the foundation of a separate suit. That the action ought to be to compel him to render an account of every thing he has done in that character. To sanction any other course would be to authorise a suit for each act done by him as executor, which would unnecessarily lead to a great multiplicity of actions. *Febrero, p.* 1. *cap.* 1, § 6. *no.* 95. *Curia Phil. Com. Terreste, lib.* 2, *cap.* 11, *nos.* 1 & 19.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be affirmed with costs.